NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3178

KEENAN V. ROSS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Keenan V. Ross, of Vallejo, California, pro se.

Michael D. Snyder, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director. Of counsel was Sean M. Dunn, Trial Attorney.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3178

KEENAN V. ROSS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Petition for review of the Merit Systems Protection Board in SF-0752-07-0805-I-3.

_____

DECIDED: November 24, 2009

_____

Before NEWMAN, RADER, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.

The Merit Systems Protection Board ("Board") dismissed Mr. Keenan V. Ross's claim for lack of jurisdiction. Mr. Ross alleges that he was constructively suspended from his limited duty position as a mail handler for the United States Postal Service ("USPS"). The Board determined that Mr. Ross was voluntarily absent from work. Therefore, the Board detected no constructive suspension and no basis for jurisdiction to pursue the matter further. Because substantial evidence supports the Board's final decision, this court <u>affirms</u>.

I.

Mr. Ross was employed by the USPS as a level four mail handler for the bulk mail center located in Richmond, California. On June 3, 1994, Mr. Ross suffered a work-related injury to his right shoulder and underwent arthroscopic surgery on September 13, 1995. Thereafter, the Office of Workers Compensation Programs ("OWCP") approved a compensation claim for Mr. Ross. On August 20, 1996, Mr. Ross accepted a "limited duty" job offer. "Limited duty" is a form of modified work provided to USPS employees that have medical restrictions due to work-related injuries.

Mr. Ross then submitted a Certification For Return to Work, dated September 23, 1996, from Michael Charles, M.D., who was his orthopedic surgeon. The certification stated that Mr. Ross was permanently restricted from lifting, pushing, or pulling greater than fifteen pounds above his right shoulder level. For several years thereafter, Mr. Ross performed limited duty assignments and occupied a limited duty mail handler position. Mr. Ross accepted a renewed limited duty position in April 2000.

On September 24, 2003, a Department of Labor claims examiner requested that Mr. Ross provide updated medical documentation within sixty days to establish his entitlement to continuing compensation benefits. The record does not show that Mr. Ross ever submitted the updated medical documentation. In April 2007, David Bernard, a USPS supervisor of distribution operations, advised management that Mr. Ross did not have an open injury compensation case. As a result, Mr. Ross should have been working at full duty capacity unless he provided updated medical documentation for any work restrictions.

Approximately three months later, a human resources specialist notified Mr. Ross that he was an unassigned full-time mail handler. His supervisors asked Mr. Ross to indicate his preference for a residual mail handler vacancy; otherwise, he would be assigned to a position based upon his seniority. When Mr. Ross did not indicate a preference, the USPS notified Mr. Ross that he was assigned, effective September 1, 2007, to a residual vacancy.

In a letter dated July 27, 2007, the Department of Veterans Affairs ("DVA") granted Mr. Ross's claim for military service-connected compensation and determined that he had several physical conditions that were related to his military service. Shortly thereafter, Mr. Ross filed a grievance regarding the USPS's residual assignment and requested a return to his prior limited duty position, partially relying on the DVA's findings. On September 19, 2007, the USPS denied Mr. Ross's grievance because he was "off work due to a medical condition and not due to any management action," effective August 13, 2007.

On August 13, 2007, Mr. Ross provided Ivan O'Quinn, Mr. Ross's supervisor, an August 8, 2007, Family and Medical Leave Act ("FMLA") form, completed by Richard Karp, M.D., that related to his DVA claim for injuries. Using this documentation, Mr. Ross asserted that he was physically unable to perform his duties due to the injuries he received while in the military. Mr. O'Quinn informed Mr. Ross that "he would have to submit a request for light duty to the plant manager because his injuries as indicated in the documentation were not job related." Id. Mr. Ross asserts, and Mr. O'Quinn disputes, that in addition to the FMLA form, he provided Mr. O'Quinn copies of his limited duty job offer and OWCP restrictions from Dr. Charles. Mr. O'Quinn allegedly

refused these documents because they did not include any updated medical documentation related to a USPS work-related injury. After Mr. Ross refused to submit a light duty request form, Mr. O'Quinn advised him that he had one week to provide updated medical documentation showing a USPS work-related injury. Mr. Ross asserted, however, that Mr. O'Quinn only gave him three days to provide this documentation.

That same day, on August 13, 2007, Mr. Ross met with David Bernard, a USPS supervisor of distribution operations at the Richmond bulk mail center. At the meeting, "Mr. Bernard opened up a file and said Mr. Ross's limited duty (on the job injury) case was closed because there had been no activity in the last years [and that there was] no record of medical updates or any treatment for Mr. Ross's injury." Mr. Bernard explained that Mr. Ross must complete a light duty request form to remain in the building. Id. When Mr. Ross refused to complete the form, he was sent home.

Two days later, on August 15, 2007, Dr. Karp examined Mr. Ross and indicated that Mr. Ross's physical concerns were increasing left shoulder pain that significantly affected his ability to work. The left shoulder issue was different from the right shoulder injury that had previously been his work-related injury. Dr. Karp noted that Mr. Ross had not worked for a number of weeks because he was unable to perform the work assigned to him; he also noted that Mr. Ross felt he could not fulfill the requirements of light duty. Id. On August 28, 2007, Dr. Karp signed a release allowing Mr. Ross's return to work on September 4, 2007, with restrictions of "no lifting above 15 lbs. at or above shoulder indefinitely."

Several weeks later, on October 24, 2007, Richard Nolan, M.D., completed a Work Capacity Evaluation indicating that Mr. Ross could not perform his usual job but could perform some work with restrictions. These restrictions included reaching above shoulder height, twisting, pushing, pulling, lifting, climbing, and working in cold, damp environments. On November 1, 2007, the USPS extended to Mr. Ross a limited duty job offer. Mr. Ross reviewed the job offer, did not decline the offer, but stated he needed his doctor to review it.

Thereafter, Dr. Nolan provided Mr. Ross a work status notice on November 21, 2007, stating that he was temporarily disabled until December 15, 2007. In a letter dated December 19, 2007, Dr. Nolan further indicated that, as a result of a diagnostic work-up, Mr. Ross was not even capable of returning to a modified work status with the USPS. In subsequent periodic work status notices that extended into 2008, Dr. Nolan indicated that Mr. Ross was "totally temporarily disabled" and that Mr. Ross stated he was unable to return to work.

On September 7, 2007, Mr. Ross filed an appeal with the Board, alleging that on August 13, 2007, he was constructively suspended for greater than fourteen days from his limited duty position as a mail handler for the USPS. On November 4, 2008, the Board dismissed the appeal in an initial decision. It held that it lacked jurisdiction because the USPS had not constructively suspended Mr. Ross; Mr. Ross's absence from work was the result of his own voluntary conduct when he refused to supply the USPS with updated medical documentation showing a work-related injury. Mr. Ross filed a petition for review with the full Board on December 6, 2008. The full Board denied the petition on March 11, 2009, at which time the Board's initial decision became

final. Mr. Ross timely appeals the full Board's final decision to this court. This court has jurisdiction over this appeal under 28 U.S.C. 1295(a)(9).

## II.

This court reviews Board decisions, including jurisdictional dismissals, "pursuant to the strictures of 5 U.S.C. § 7703(c)." Maddox v. Merit Sys. Prot. Bd., 759 F.2d 9, 10 (Fed. Cir. 1985). As such, this court affirms the Board's decision if it is supported by substantial evidence in accordance with the law, and is not procedurally defective, arbitrary, or capricious. See generally 5 U.S.C. § 7703(c). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Haebe v. Dep't of Justice, 288 F.3d 1288, 1298 (Fed. Cir. 2002); Jacobs v. Dep't of Justice, 35 F.3d 1543, 1546 (Fed. Cir. 1994).

Placing an employee on enforced leave without pay for greater than fourteen days, even if not termed a "suspension," may constitute a constructive suspension that allows the employee to appeal to the MSPB under 5 U.S.C. §§ 7512(2) and 7513(d). Perez v. Merit Sys. Prot. Bd., 931 F.2d 853 (Fed. Cir. 1991). "Suspension" is defined as "the placing of an employee, for disciplinary reasons, in a temporary status without duties and pay." 5 U.S.C. § 7501(2). An employee who voluntarily absents himself from the workplace, however, even due to a valid medical consideration, is not constructively suspended because the leave is not enforced. Id. at 855. In short, for a constructive suspension, an employee must show by a preponderance of the evidence that he or she was "ready, willing, and able to work" but was not permitted to do so.

<u>Adams v. Dep't of Transp.</u>, 735 F.2d 488, 492 (Fed. Cir. 1984); 5 C.F.R. § 1201.56(a)(2).

A.

Mr. Ross asserts that the Board's ruling is not supported by substantial evidence because "[t]he record contains post-suspension medical evidence from my current treating physician, reaffirming a prior medical opinion that I was medically able to perform my limited duty assignment." Petitioner's Informal Brief ("Inf. Br.") at 1-F. The record indeed reflects that, on October 24, 2007, Dr. Nolan indicated that Mr. Ross could perform work with restrictions. The record also shows that just a week later, on November 1, 2007, the USPS extended to Mr. Ross a limited duty job offer that he did not accept. Further, in December 2007, Dr. Nolan determined that Mr. Ross was not even capable of returning to a modified work status; he indicated for several months thereafter that Mr. Ross was "totally temporarily disabled," while also noting that Mr. Ross stated he was unable to return to work. In sum, Mr. Ross was offered a limited duty job assignment, but did not accept the assignment.

Mr. Ross also asserts that, after the August 13, 2007, meeting with Mr. O'Quinn, he was not given a "reasonable time to obtain" the medical documentation for his alleged work-related injury. First, the record demonstrates that the USPS ultimately gave Mr. Ross greater than two months to provide medical documentation supporting limited duty work assignments. Indeed, the USPS offered Mr. Ross a limited duty work assignment that he refused. Moreover, in the interim, the USPS also offered Mr. Ross light duty work that he also declined.

The facts show that Mr. Ross was given reasonable opportunities to show that he was entitled to a limited duty job offer. Indeed, he received such an offer, but he refused it allegedly due to his inability to perform. In sum, Mr. Ross voluntarily declined to work. Accordingly, the Board correctly found no constructive suspension. See Adams, 735 F.2d at 492 (Constructive suspension requires that the employee show by a preponderance of the evidence that he was "ready, willing, and able to work.").

## B.

Because the USPS did not constructively suspend Mr. Ross, the Board did not have jurisdiction to entertain his appeal. This court has found on other occasions that no constructive suspension exists when an absentee employee is placed in a non-pay status by an agency, pending receipt of satisfactory medical documentation regarding his or her ability to work. Holloway v. U.S. Postal Serv., 993 F.2d 219, 221-22 (Fed. Cir. 1993); Perez, 931 F.2d at 854-55.

For these reasons, this court finds that the Board did not abuse its discretion, its findings were not arbitrary, capricious, contrary to law, or otherwise reversible, and affirms its final decision in this case.

## AFFIRMED

No costs.